## Girard Water Company's Tax.

*Taxation—Corporations — Capital stock—Water company—Stock held as charitable trust—Act of June 1, 1889.*

1. With the exception of the corporations specifically exempt from the provisions of sections 20 and 21 of the Act of June 1, 1889, P. L. 420, as amended, every corporation from whom a report is required under section 20 of the act is subject to the capital stock tax.

2. The stock of a water company all of which is held by a city for a charitable use under a will, is subject to the capital stock tax.

Department of Justice. Opinion to Hon. J. Lord Rigby, Revenue Deputy, Auditor General's Department.

MOYER, Dep. Att'y-Gen., Dec. 20, 1926.—You have advised the Attorney-General that the Girard Water Company, which was chartered under the laws of this Commonwealth on Aug. 29, 1883, and has been taxed on the value of its capital stock since that date, having regularly filed its annual reports, now

claims that it is exempt from said tax on its capital stock for the reason that all said stock is owned by the City of Philadelphia as trustee under the will of Stephen Girard, deceased, which organized and operates such corporation for the benefit of the said City of Philadelphia, trustee, and that the entire net income from the Girard Water Company is devoted by said trustee for the maintenance and support of Girard College, a public charity for poor white male orphans. In other words, the corporation contends that the capital stock of a Pennsylvania corporation which might otherwise be taxable is exempt from taxation when said stock is wholly owned by a charitable corporation. You advise that a settlement for capital stock tax for the year 1925 was duly made against this corporation by the Auditor General and approved by the State Treasurer, and you inquire whether the State taxing officers were right in making such settlement against this corporation for capital stock tax under the circumstances aforementioned.

The Girard Water Company was incorporated under the provisions of the Act of April 29, 1874, P. L. 73, for the purpose, as expressed in its charter, as follows: "Supplying water to the public in the Township of West Mahanoy, in the County of Schuylkill, State of Pennsylvania, and to persons, partnerships and corporations residing therein and adjacent thereto as may desire the same, etc."

Section 21 of the Act of June 1, 1889, P. L. 420, as amended by the Acts of June 8, 1891, P. L. 229, June 8, 1893, P. L. 353, June 7, 1907, P. L. 430, June 7, 1911, P. L. 673, and July 22, 1913, P. L. 903, provides, inter alia, as follows: "That every corporation, joint-stock association, limited partnership and company whatsoever, from which a report is required under the twentieth section hereof, shall be subject to, and pay into the Treasury of the Commonwealth annually, a tax at the rate of five mills upon each dollar of the actual value of its whole capital stock of all kinds, including common, special and preferred, as ascertained in the manner prescribed in said twentieth section. . . ."

Section 20 of the Act of June 1, 1889, P. L. 420, as amended by the Acts of June 8, 1891, P. L. 229, June 2, 1915, P. L. 730, and July 15, 1919, P. L. 948, provides, in part, as follows: "That hereafter, except in the case of banks, savings institutions, title insurance or trust companies, building and loan associations, and foreign insurance companies, it shall be the duty of the president, vice-president, secretary or treasurer of every corporation having capital stock, every joint-stock association, limited partnership, and every company whatsoever, . . . to make annually, on or before the last day of February, for the calendar year next preceding, a report in writing to the Auditor General, . . . stating specifically: First, the amount of its capital stock. . . ."

With the exception of the corporations specifically exempt by the provisions of sections 20 and 21 of the Act of June 1, 1889, P. L. 420, as amended, every corporation "from whom a report is required under the twentieth section" is subject to the capital stock tax. It is entirely unnecessary to discuss here in detail the various exemptions from the capital stock tax.

In a brief filed in your department by the corporation, in furtherance of its contention that it is exempt from the capital stock tax in question, reference is made to the opinion of Deputy Attorney-General Hull to Auditor General Lewis, July 13, 1922 (2 D. & C. 366), from which opinion the following quotation is made: "The tax on capital stock is a tax upon the property of the corporation: Com. v. Standard Oil Co., 101 Pa. 119. If there were any religious or charitable corporations which had capital stock, a tax upon such stock

would be a tax upon the property of the corporation. It cannot be said that the language of the act imposing the capital stock tax is 'express language, clearly showing that such taxation was intended.' It follows from the decisions cited above that such corporations of the first class as are created and operated for purely charitable or religious purposes are not subject to the capital stock tax."

Reference is also made by the corporation to various decisions, among which are the important cases of General Assembly v. Gratz, 139 Pa. 497, and Mattern v. Canevin, 213 Pa. 588, in the the first of which cases it was held and again declared in the latter case: "That, inasmuch as it had been the settled custom and policy from the foundation of our Commonwealth to abstain from the taxation of property held for charitable and religious purposes, such taxation would not be presumed to have been intended by the legislature in the absence of express language clearly showing that such taxation was intended."

However, these cases cited, and the quotation from the opinion of Deputy Attorney-General Hull aforementioned, do not have immediate application to the instant case, because here we are dealing with the trustee of a public charity that has gone beyond its business of operating the charitable institution in question and has incorporated a corporation, to wit, the Girard Water Company, to engage in a business or trade for the purpose of increasing its revenue.. The law has recognized a distinction between that which is purely a public charity and that which is commercial in its character. The mere ownership of capital stock by a public charity, as in this case, is not the test to determine exemption from taxation.

As was said by Mr. Justice Dean in the case of Sunday School Union v. Philadelphia et al., 161 Pa. 307, 315: "In all cases of this kind the tendency naturally is to an excessively liberal construction of the constitutional exemption, a construction not warranted, perhaps, by its plain restriction. The people knew what they meant, when, in 1874, they said, by an overwhelming majority: 'The General Assembly may, by its general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit and institutions of purely public charity.' They meant nothing else should be exempt from taxation. By no judicial rule of construction can these words be made to mean that a commercial enterprise is exempt because the whole profit of it goes into the treasury of, and it is carried on by, a purely public charity. In so far as the institution is charitable and its revenues are derived from the contributions of the charitable, it is protected by the Constitution. But if such institution sees fit to engage in trade for the purpose of increasing its revenue or making any part of its business 'self-supporting,' the trade part of its business can be taxed, and ought to be."

In the case of Episcopal Academy v. Philadelphia, 150 Pa. 565 (1893), Mr. Justice Williams, referring to the decision in the case of Philadelphia v. Women's Christian Ass'n, 125 Pa. 572, said: "We are now disposed to go further and say that an institution that is in its nature and purposes a public charity does not lose its character as such under the tax laws if it receives a revenue from the recipients of its bounty sufficient to keep it in operation. It must not go beyond self-support. *When a charity embarks in business for profit, it is liable to taxation like any other business establishment. . . .*"

So, in the instant case, although the City of Philadelphia, trustee of the trust estate of Stephen Girard, deceased, may have incorporated the Girard Water Company for the purpose of protecting certain interests of said trust estate and owns all the stock of said corporation, and, although all the net

income from said water company may be devoted by said trustee to the support and maintenance of Girard College, a recognized public charity, nevertheless, the corporation itself, by its purpose clearly expressed in its charter, is engaged in the business of supplying water to the public for profit and has thereby become liable for the capital stock tax. You are accordingly advised that, under the facts of this case, as you have detailed them, the Girard Water Company, for the year ending Dec. 31, 1925, is liable for the Pennsylvania capital stock tax.

From C. P. Addams, Harrisburg, Pa.